Filed 1/17/23  Marriage of Koelewyn CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of RYAN KOELEWYN and JENNIFER KOELEWYN. | |
| RYAN KOELEWYN, | F082837 |
| Appellant, | (Super. Ct. No. VFL255652) |
| v. | |
| JENNIFER KOELEWYN, | **MODIFICATION OF OPINION AND DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |
| Respondent; | |
| TULARE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| Intervener and Respondent. | |

**THE COURT:**

It is ordered that the opinion filed herein on December 22, 2022, be modified as follows:

1.  On page 2, under "INTRODUCTION," the first sentence of the first paragraph is deleted and replaced with the following:

"Appellant Ryan Koelewyn appeals from a March 25, 2021 order denying him relief from his obligation to pay certain child and spousal support arrears (subject order)."

2.  On page 2, under "INTRODUCTION," the following sentence is inserted at the end of the first paragraph:

"He also argues that, shortly thereafter, the Tulare County Department of Child Services (DCSS) modified the trial court's support order to set his support obligations at zero dollars and that the subject order in 2021 was an impermissible retroactive modification of the prior order as modified by DCSS."

3. On page 2, under "INTRODUCTION," the first sentence of the second paragraph is deleted and replaced with the following:

"The DCSS, as intervener in the action, filed a respondent's brief in opposition to the appeal."

4. On page 4, the last paragraph that begins "On November 12, 2014, the trial court issued," is deleted and replaced with the following:

"On November 12, 2014, the trial court issued an order after hearing (November 2014 support order) which read, in relevant part, "All orders previously made in this action remain in full force and effect except as modified below." No actual modifications to Ryan's support obligations were made in the order. The order also read, in relevant part, "The court finds that child support shall remain as previously ordered. Further, the court finds that the terms of the court's standard orders will control during [Ryan's] incarceration." The November 2014 support order also contained the following printed advisement:"

For clarification, the indented block quote that immediately follows the paragraph and begins "As provided in [former] section 4007.5," should be retained in the opinion.

5. On page 6, the first full sentence that begins "It reflected, among other things," is deleted and replaced with the following:

"It reflected, among other things, that Ryan owed $15,365 in arrears on his support obligations and accrued interest thereon in the amount of $8,163.41."

6. On page 7, in the first full paragraph under "DISCUSSION," the third sentence that begins "However, he contends," is deleted and replaced with the following:

"However, he contends, DCSS never attended the November 12, 2014 hearing, and thereafter sent him coupons that reflected his support obligations had been suspended."

2.

7. On page 7, in the first full paragraph under "DISCUSSION," the fourth sentence that begins "Ryan argues, therefore," is deleted and replaced with the following:

"Ryan argues, therefore, by operation of law, he was entitled to have his support obligations reduced to zero for his period of incarceration, and that principles of res judicata and collateral estoppel bar the court from relitigating the issue."

8. On page 8, in the final paragraph that begins "(d)  Notwithstanding subdivision (a)," the word "oblige" is deleted and replaced with "obligee."

9. On page 9, the following paragraph is inserted at the top of the page, before the paragraph that begins "The record on appeal indicates":

"Notably, the potential for temporary suspension of support payments provided under former section 4007.5 only applied to child support payments—not spousal support payments."

10. On page 11, in the last paragraph, the first sentence that begins "Contrary to Ryan's arguments on appeal," is deleted and replaced with the following:

"Contrary to Ryan's arguments on appeal, the original support order did not set his support obligations at zero dollars."

11. On page 11, in the last paragraph, the third sentence that begins "It further provided," is deleted and replaced with the following:

"It further provided, "[c]hild support payments shall continue until further order of the court, or until the child marries, dies, is emancipated, reaches 19, or reaches 18 and is not a full-time student residing with a parent, whichever occurs first," that "[Ryan] shall pay to [Jennifer] spousal/family support in the sum of $932.00 per month … commencing [June 1], 2014[,]" and that "[a]ll terms of the Court's Standard Orders are adopted." "

12. On page 12, the following sentence is added to the end of the second full paragraph that begins "Similarly, in its November 2014":

"Similarly, no modification was made to the court's prior order setting spousal support at $932 per month."

13. On page 12, the third full paragraph that begins "It is clear from the original," is deleted and replaced with the following paragraph:

3.

"It is clear from the original support order, the November 2014 support order, and the court's standard orders incorporated into each, that Ryan's support obligations were not set to zero dollars; that, rather, Ryan's spousal support obligations were set at $932 per month; that his child support obligations were set at $1,563 per month; that DCSS could adjust its charging instructions to reflect suspension of the child support amounts; and that, in doing so, DCSS would not be precluded from seeking a subsequent judicial determination of the applicable and appropriate arrearages."

14. On page 14, in the second full paragraph, the second sentence that begins "Those orders expressly," is deleted and replaced with the following sentence:

"Those orders expressly and unequivocally set Ryan's child support obligation at $1563 per month and spousal support obligation at $932 per month."

15. On page 14, in the third full paragraph, the last sentence that begins "The 2020 audit was based," is deleted and replaced with the following:

"The 2020 audit was based on the support obligations as reflected in the November 2014 support order."

16. On page 16, the second full paragraph that begins "Ryan does not cite to any," is deleted and replaced with the following paragraph:

"Ryan does not cite to any applicable authority for the proposition that DCSS had a duty to argue for, or against, suspending his child support obligations during the 2014 hearings, and we are not aware of any such duty. His reliance on former code section 4007.5 is unavailing since it did not impose such a duty on DCSS. Moreover, Ryan is not challenging the original support order or the November 2014 support order. He is appealing the subject order issued on March 25, 2021."

17. On page 17, footnote "8" is added to the end of the last paragraph before "DISPOSITION," as follows:

"In his petition for rehearing, Ryan argues "[t]he command of the trial court was to retroactively modify spousal and child support without providing [him] with notice and an opportunity to be heard retroactively." However, as discussed above, the court did not retroactively modify spousal support or child support. Ryan's support obligations remained the same throughout the relevant time period. While it is true that DCSS adjusted its charging instructions to reflect a projected suspension of certain support payments,

4.

that adjustment did not have the effect of overriding or altering the trial court's November 2014 support order."

This modification does not effect a change in the judgment.

The petition for rehearing is denied.

                                                                SMITH, J.

WE CONCUR:


LEVY, ACTING P. J.


FRANSON, J.

Filed 12/22/22  Marriage of Koelewyn CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of RYAN KOELEWYN and JENNIFER KOELEWYN. | |
| RYAN KOELEWYN,<br><br>        Appellant,<br><br>        v.<br><br>JENNIFER KOELEWYN,<br><br>        Respondent;<br><br>TULARE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>        Intervener and Respondent. | F082837<br><br>(Super. Ct. No. CFL255652)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Norma Castellanos-Perez, Commissioner.

Ryan Koelewyn, in pro. per, for Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Ricardo Enriquez, Deputy Attorneys General, for Intervener and Respondent Tulare County Department of Child Support Services.

-ooOoo-

## INTRODUCTION

Appellant Ryan Koelewyn appeals from a March 25, 2021 order denying him relief from his obligation to pay certain child support arrears (subject order). Ryan[1] premised his contention that he should be relieved from this obligation on the fact he was in prison for approximately five years and three months before being paroled on February 11, 2020. Ryan argues he was entitled to a suspension of his child support obligations during said period under former Family Code section 4007.5 (Stats. 2010, ch. 495, § 1) (former section 4007.5).

The Tulare County Department of Child Support Services (DCSS), as intervener in the action, filed a respondent's brief in opposition to the appeal. We affirm the subject order.

## FACTS AND PROCEDURAL BACKGROUND

Ryan and Jennifer Koelewyn were previously married. Together, they had two biological children. Jennifer also had another minor daughter (i.e., Ryan's stepdaughter) from a previous relationship.

In March of 2014, Ryan filed for dissolution of his marriage to Jennifer. One or more hearings in the matter followed over the course of the next couple of months, including a May 15, 2014 hearing at which the trial court considered issues of child and spousal support.

On June 2, 2014, the trial court issued its findings and order after hearing (original support order) in connection with the May 15, 2014 hearing. Pursuant to the original support order, Ryan was ordered to pay Jennifer child support in the amount of $1,563 per month commencing June 1, 2014, to support the parties' two biological children, and spousal support in the amount of $932 per month commencing June 1, 2014. The court

---

[1]    It is common practice to use the parties' first names in family litigation. (*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 803, fn. 2.) We adhere to, but intend no disrespect by, this practice.

2.

also granted a restraining order after hearing[2] against Ryan (CLETS restraining order). The CLETS restraining order was issued to protect Jennifer and all three children.[3]

The original support order also provided: "All terms of the Court's Standard Orders [standard orders] are adopted."[4] The Court's standard orders (standard orders) in effect in 2014 read, in part:

> "No provision of this judgment/order may operate to limit any right to collect the principal (total amount of unpaid support) or to charge and collect interest and penalties as allowed by law."

The standard orders also provided the following description as to the effect of former section 4007.5:

> "Commencing July 1, 2011, as provided in Family Code Section 4007.5, the obligation of the person ordered to pay support will be temporarily suspended for any period after the first 90 consecutive days in which the person ordered to pay support is incarcerated or involuntarily institutionalized, *unless that person has* the ability to pay support during that time or has *committed certain crimes*. Immediately after the person ordered to pay support is released from incarceration or involuntary institutionalization, the support order will restart in the same amount as it was before it was temporarily suspended. DCSS is authorized to adjust its charging instructions to reflect the suspension of support during any months where DCSS determines support is zero or is projected to be zero without prejudice to a subsequent judicial determination at the request of DCSS or either parent or legal guardian." (Emphasis added.)

---

**2** Judicial Council Form DV-130.

**3** The record on appeal does not include a copy of the CLETS restraining order. However, at the March 25, 2021 hearing on Ryan's request for an order (RFO), the trial court took judicial notice of the order, that Ryan was the restrained party, and that the three children were listed as additional protected persons. Ryan admitted to the court the CLETS restraining order was issued, and, on appeal, does not challenge the court's decision to take judicial notice of it.

**4** Although the original support order did not attach a copy of the trial court's standard orders, a copy of the court's standard orders in effect at the time was offered and received into evidence at the March 25, 2021 hearing that led to the issuance of the subject order.

As alluded to previously, the application of former section 4007.5 is at the heart of Ryan's appeal.

In its original support order, the trial court set a further hearing for August 21, 2014, to, among other things, "review the CLETS restraining order and the custody/visitation issues as well as [Ryan's] request that [Jennifer] be imputed with the ability to earn minimum wage income for purposes of calculating child and spousal support."

On August 15, 2014, Ryan filed a declaration and memorandum of points and authorities in which he contended his earning capacity had been adversely affected by a criminal investigation and resulting criminal charges against him. Ryan stated he had been investigated by the Tulare County District Attorney for "possession of child pornography"; "was arrested for allegedly molesting" his stepdaughter in April of 2014; was placed "on administrative leave with pay"; and was subsequently "placed on unpaid leave pending the outcome of the outstanding criminal charges against [him]." Ryan further averred he had "submitted upwards of 40-45 applications to various potential employers" and had "sent out over 50 cover letter and resume combinations," but had not received any interviews. As a result, he contended he no longer had the same ability to earn as he had when the original support order was issued, and argued for reduced support obligations. Ryan requested the court modify the original support order.

On November 12, 2014, the trial court issued an order after hearing (November 2014 support order) which read, in relevant part, "The court finds that child support shall remain as previously ordered. Further, the court finds that the terms of the court's standard orders will control during [Ryan's] incarceration." The November 2014 support order also contained the following printed advisement:

> "As provided in [former] section 4007.5, the obligation of the person
> ordered to pay support will be temporarily suspended for any period after
> the first 90 consecutive days in which the person ordered to pay support is
> incarcerated or involuntarily institutionalized, *unless that person* has the

4.

ability to pay support during that time or *has committed certain crimes.* Immediately after the person ordered to pay support is released from incarceration or involuntary institutionalization, the support order will restart in the same amount as it was before it was temporarily suspended." (Emphasis added.)

Ryan was ultimately convicted of one or more of the offenses charged against him. Ryan admitted the victim was his stepdaughter. Although Ryan does not provide a copy of his judgment of conviction in his record on appeal, he acknowledged the following in his opening brief:

> "It is <u>undeniable</u> that the exception at [former section] 4007.5(2)(d) precludes relief for an individual like [him]. And had [DCSS] argued against the application of [former section] 4007.5 at the final family law hearing on November 12, 2014[, he is] positive that they would have prevailed and rightly so. However, they did not attend that hearing."

Setting aside for the moment Ryan's arguments on appeal, based on the foregoing statement, we presume that Ryan's conviction would otherwise satisfy the criteria set forth in former section 4007.5, subdivision (2)(d), which precludes the suspension of child support obligations.[5]

Ryan admits in his opening brief that he was sentenced to a term of eight years, and that he served approximately five years and three months after which time he was paroled on February 11, 2020. During that time, Ryan contends he "received monthly payment coupons … from [DCSS] confirming the suspended monthly support amount of $0.00" and that "a total of sixty-four (64) payment coupons were received."

On December 30, 2019, shortly before his parole date, Ryan filed a request for an order to reduce his child support payments, end his spousal support payments, and remove interest that accrued on support arrears. In support of his RFO, Ryan included a copy of a monthly billing statement from DCSS for the period beginning November 1,

---

[5] Were Ryan to contend otherwise, we would have little choice but to rule against him on that issue due to a failure to supply this court with an adequate record demonstrating the nature of his conviction. (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 [appellant's affirmative duty to show error by an adequate record].)

2019, and ending November 30, 2019.  It reflected, among other things, that Ryan owed $15,365 in arrears on his child support obligations and accrued interest thereon in the amount of $8,163.41.

On March 5, 2020, the trial court issued a minute order and an order after hearing (2020 support order).  The minute order indicated Ryan and Jennifer "stipulate[d] to set spousal support at $0.00 per month, Father to pay, effective January 1, 2020," and that Jennifer "stipulate[d] to waive interest on child support and spousal support arrears, effective December 1, 2014."  The minute order further provided, "[DCSS] shall produce[] an audit consistent with the aforementioned stipulations of the parties.  The matter is continued to June 15, 2020[,] at 10am in Department 1, Dinuba Division for receipt of the audit."  The 2020 support order also stated, in part, "[a]ll orders previously made in this action remain in full force and effect except as specifically modified."

On March 25, 2020, DCSS filed its audit along with a declaration from a DCSS child support specialist (collectively, the 2020 audit).  After finding Ryan had paid a total of $2,380 towards his support obligations, the 2020 audit indicated Ryan owed the following amounts:  "Never Assigned (NA) Principal Child Support [in the amount of] $92,963[], Never Assigned Child Support Interest [in the amount of] $182.65, Never Assigned Spousal Support Principal [in the amount of] $62,444[], and Never Assigned Spousal Support Interest [in the amount of] $116.69."  The total amount due under the audit was stated as $155,706.34 as of March 9, 2020.  DCSS requested the court adopt the audit as the total arrearages owed by Ryan.

The matter was continued on more than one occasion and was eventually scheduled to be heard on September 21, 2020.  Prior thereto, on August 31, 2020, Ryan was ordered to "file and serve prior to the hearing date the Points and Authorities regarding Family Code Section 4007.5."

6.

On September 15, 2020, Ryan filed a declaration in which he opposed the 2020 audit and set forth his grounds for the relief he was requesting. In his declaration, Ryan made the same or similar arguments to those he now raises on appeal.

On September 21, 2020, the court set a contested hearing to occur on October 27, 2020, regarding the application of former section 4007.5 to Ryan's child support obligations. The hearing was again continued. Subsequently, DCSS filed a reply to Ryan's September 15, 2020 declaration, and Ryan filed a further declaration in response to DCSS's reply.

On March 25, 2021, the hearing went forward. The trial court issued the subject order denying Ryan's "request for relief under Family Code Section 4007.5 and standard orders attachment that were in place at the time of the Findings Order After Hearing filed on June 2, 2014." The subject order adopted and incorporated the 2020 audit and the arrearages it assessed against Ryan.

On May 24, 2021, Ryan timely appealed the subject order.

## DISCUSSION

### I.     Ryan's Contentions on Appeal

On appeal, Ryan admits former section 4007.5 "precludes relief for an individual like [him]." He posits "had [DCSS] argued against the application of [former section] 4007.5 at the final family law hearing on November 12, 2014," his obligation to continue paying child support during his period of incarceration would not have been suspended. However, he contends, DCSS never attended the November 12, 2014 hearing, and thereafter sent him coupons that reflected his child support obligations had been suspended. Ryan argues, therefore, by operation of law, he was entitled to have his child support obligations reduced to zero for his period of incarceration, and that principles of res judicata and collateral estoppel bar the court from relitigating the issue. He further argues the court's adoption of the 2020 audit—which assessed arrearages for the period of his incarceration—amounted to a denial of due process.

7.

## II. The Trial Court Treated Ryan's Objection to the 2020 Audit as a Petition to Adjust Arrears Under Former Section 4007.5

At the time the original support order and November 2014 support order were entered, former section 4007.5 provided, in relevant part:

"(a) Every money judgment or order for support of a child that is being enforced by a local child support agency … shall provide the following:  [¶] (1) The obligation of the person ordered to pay support shall be suspended for any period exceeding 90 consecutive days in which the person ordered to pay support is incarcerated or involuntarily institutionalized, unless the obligor has the means to pay support while incarcerated or involuntarily institutionalized.  [¶]  (2) The suspension of the support obligation shall only apply for the period of time during which the obligor is incarcerated or involuntarily institutionalized, after which the obligation shall immediately resume in the amount otherwise specified in the child support order.

[¶] … [¶]

"(c) Upon release from incarceration or involuntary institutionalization, an obligor may petition the court for an adjustment of the arrears pursuant to the suspension of the support obligation .…  The obligor must show proof of the dates of incarceration or involuntary institutionalization, as well as proof that during that time, the obligor did not have the means to pay the support.  The obligor shall serve copies of the petition to the support obligee and the local child support agency, who may file an objection to the obligor's petition with the court.  An obligor's arrears shall not be adjusted until the court has approved the petition.

"(d) Notwithstanding subdivision (a), the court may deny the obligor's petition if it finds that the obligor was incarcerated or involuntarily institutionalized for any offense constituting domestic violence, as defined in Section 6211, against the support oblige or supported child, or for any offense that could be enjoined by a protective order pursuant to Section 6320, or as a result of his or her failure to comply with a court order to pay child support."  (Former § 4007.5.)  (Stats. 2010, ch. 495, § 1.)[6]

---

[6]    On January 24, 2022, DCSS requested this court judicially notice portions of the legislative history of Senate Bill No. 1355 (2009-2010 Reg. Sess.) by which former section 4007.5 (Stats. 2010, ch. 495, § 1) was enacted.  On January 31, 2022, Ryan objected to DCSS's request for judicial notice and requested that this court judicially notice "additional portions of the legislative history of Senate Bill 1355."  On February 3, 2022, we deferred ruling on both parties' requests.  We now grant both requests.

8.

The record on appeal indicates a hearing was held on June 15, 2020, after DCSS had filed the 2020 audit. The record further reveals that Ryan participated telephonically and that he had "indicate[d] he executed the Stipulation and Order" and that he mailed it to DCSS. The exact nature of the stipulation and order is not stated. However, at an August 31, 2020 hearing, at which Ryan appeared by ZOOM video, Ryan indicated he desired to withdraw the stipulation. As a result, the trial court issued its direction to Ryan "to file and serve prior to the [September 21, 2020] hearing date the Points and Authorities regarding [former] Section 4007.5." Based on this record, we think it fair to presume that Ryan voiced his objection to the 2020 audit and that the trial court elected to treat Ryan's presumed objection to the 2020 audit as a petition under subdivision (c) of former section 4007.5 for an adjustment of arrears assessed by DCSS.

We see no impropriety, or abuse of discretion by the court, in electing to treat an objection by Ryan to the 2020 audit as a petition under subdivision (c) of former section 4007.5. Had the court not elected to do so, it is relatively certain the 2020 audit would have been adopted without providing Ryan an opportunity to make his case for an adjustment of child support arrears.

---

We also take this occasion to note that both parties appear to concede that former section 4007.5 applies to the original support order and November 2014 support order. Regardless, as is relevant to this appeal, former section 4007.5 does not differ in any meaningful way from later enacted versions of the statute. Each succeeding version of the statute provides for the suspension of child support obligations during periods of incarceration exceeding 90 consecutive days unless the "person owing support was incarcerated … for an offense constituting domestic violence, as defined in Section 6211, against the supported party or supported child, or for an offense that could be enjoined by a protective order pursuant to Section 6320, or as a result of … failure to comply with a court order to pay child support." (Stats. 2015, ch. 629, § 2, eff. Oct. 8, 2015, to Dec. 31, 2019; Stats. 2020, ch. 217, § 2, eff. Jan. 1, 2021.) Each version of section 4007.5, sunsetted by their own terms on specified dates. No version of the statute appears to have been in effect during the calendar year 2020.

## III.    Standard of Review

Ryan and DCSS agree the subject order should be reviewed on appeal for abuse of discretion.  We concur.  Former section 4007.5 provided "the court *may* deny" a petition for the adjustment of arrears "if it finds that the obligor was incarcerated … for any offense constituting domestic violence … against the support obligee or supported child, or for any offense that could be enjoined by a protective order pursuant to section 6320." (Former section 4007.5, subd. (2)(d), emphasis added.)  "As a rule of statutory construction, the word 'may' generally connotes discretionary action." (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 218; Fam. Code, § 12 [" 'Shall' is mandatory and 'may' is permissive."].)  Here, former section 4007.5 confers discretion upon the court to deny a petition for the adjustment of arrears.

To the extent the interpretation of a statute is at issue, our review is de novo.  (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906-907.)  "[W]here 'the propriety of a[n] … order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Henderson* (2018) 20 Cal.App.5th 467, 470; *Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123.)[7]

## IV.    DCSS Was Not Barred by Principles of Res Judicata or Collateral Estoppel From Seeking to Assess Arrears for the Period of Ryan's Incarceration

Ryan contends the original support order was a "final judgment" and that DCSS was barred by principles of res judicata or collateral estoppel from assessing arrears for the period of his incarceration.

" 'Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.

---

[7]    DCSS further argues that the trial court's conclusion that Ryan's conviction was for an " 'offense[] that could be enjoined by a protective order pursuant to Section 6320,' is a question of law that is reviewed de novo," citing *Holmes v. Jones* (2000) 83 Cal.App.4th 882, 888.  However, as mentioned, Ryan does not challenge the fact his conviction is of a type for which former section 4007.5 precludes suspension of child support obligations.

10.

Collateral estoppel, or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." ' " (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.) "[R]es judicata and collateral estoppel require three common elements: ' "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." ' " (*Id.* at pp. 82-83.)

Where a court retains the power to modify a child support order, "[s]uch an order cannot … be considered a judgment in the sense of its being a final adjudication of the rights and duties of the parent and the minor child. It was not intended to and does not operate to crystallize or limit the duty of the parent to support his minor child, but merely defines the extent of his duty during the life of the order." (*Rosher v. Superior Court* (1937) 9 Cal.2d 556, 559.) Subject to certain exceptions not relevant here, "a support order may be modified or terminated at any time as the court determines to be necessary." (Fam. Code, § 3651, subd. (a); see *id.* at § 5700.205 [continuing, exclusive jurisdiction to modify child-support orders, involving nonresidents].) However, as acknowledged by the trial court, generally, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (*Id.* at § 3651, subd. (c)(1).)

Contrary to Ryan's arguments on appeal, the original support order did not set his child support obligations at zero dollars. Rather, the express language of the original support order reads, in relevant part, "[Ryan] shall pay [Jennifer] for support for the minor child(ren) the sum of $1563.00 per month, payable on the first day of each month commencing [June 1], 2014." It further provided, "[c]hild support payments shall continue until further order of the court, or until the child marries, dies, is emancipated, reaches 19, or reaches 18 and is not a full-time student residing with a parent, whichever occurs first," and that "[a]ll terms of the Court's Standard Orders are adopted." For the

11.

convenience of the reader, we again set forth the relevant text of the trial court's standard orders:

> "Commencing July 1, 2011, *as provided in Family Code Section 4007.5, the obligation of the person ordered to pay support will be temporarily suspended* for any period after the first 90 consecutive days in which the person ordered to pay support is incarcerated …, *unless that person … has committed certain crimes*. Immediately after the person ordered to pay support is released from incarceration …, the support order will restart in the same amount as it was before it was temporarily suspended. *DCSS is authorized to adjust its charging instructions to reflect the suspension of support* during any months where DCSS determines support is zero or is projected to be zero *without prejudice to a subsequent judicial determination at the request of DCSS or either parent or legal guardian*." (Emphasis added.)

Similarly, in its November 2014 support order, the trial court stated, "[t]he court finds that child support shall remain as previously ordered. Further, the court finds that the terms of the court's standard orders will control during [Ryan's] incarceration." The November 2014 support order also contained, within the order itself, the following language: "As provided in Family Code section 4007.5, the obligation of the person ordered to pay support will be temporarily suspended for any period after the first 90 consecutive days in which the person ordered to pay support is incarcerated …, *unless that person … has committed certain crimes*." (Emphasis added.)

It is clear from the original support order, the November 2014 support order, and the court's standard orders incorporated into each, that Ryan's child support obligations were not set to zero dollars; that, rather, Ryan's child support obligations were set at $1,563 per month; that DCSS could adjust its charging instructions to reflect suspension of the support amounts; and that, in doing so, DCSS would not be precluded from seeking a subsequent judicial determination of the applicable and appropriate arrearages.

The fact that DCSS was authorized to adjust its charging instructions to reflect suspension of child support payments did not operate to bind DCSS to a determination that a suspension of the obligation was warranted. DCSS was authorized to make that

12.

adjustment "without prejudice" to its ability to contend suspension was not appropriate. "The term 'without prejudice,' in its general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought." (*Chambreau v. Coughlan* (1968) 263 Cal.App.2d 712, 718.) Plainly, under the express terms of above referenced orders, DCSS was not collaterally estopped from requesting the court adjudicate the propriety of suspending Ryan's child support obligations under former section 4007.5.

We conclude DCSS was not barred by principles of res judicata or collateral estoppel from seeking the trial court's approval and adoption of its 2020 audit.

## V. The Trial Court Had Jurisdiction to Adopt the 2020 Audit as Part of Its Subject Order

Ryan correctly contends a trial court may not modify a support order " 'as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify' " the support order. (Fam. Code, § 3603; see *id.* at § 3651.) Ryan contends, " '[t]he Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down,' " quoting *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26 (*Stover*). The *Stover* court also noted, " 'a trial court has no discretion to absolve an obligor of support arrearages, or interest thereon.' " (*Ibid.*)

Ryan also notes that a " 'trial court acts "in excess of the court's jurisdiction" if it modifies support retroactive to any time before the filing of the obligor's modification motion,' " quoting *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 599. Moreover, as discussed above and as noted by Ryan in his opening brief, the trial court likewise acknowledged this limitation on its jurisdiction.

We have no quarrel with the law as represented by Ryan and as set forth in the above referenced statutes and cases. However, we disagree with Ryan as to the underlying facts.

Here, DCSS adjusted its charging instructions to reflect its *projected* suspension of support obligations. DCSS was authorized to make that adjustment in the standard orders adopted in the original support order and, again, in the November 2014 support order, without prejudice to DCSS's right to obtain a judicial determination concerning the propriety or impropriety of suspending support payments.

The jurisdictional prohibition on a trial court modifying a support order retroactive to any time before the filing of the obligator's modification motion limited the court's ability to modify the original support order and subsequent November 2014 support order. Those orders expressly and unequivocally set Ryan's child support obligation at $1563 per month. The orders did not indicate the court was formally adjudicating Ryan's entitlement to suspension of child support arrears. (In fact, Ryan had not even been convicted or incarcerated at the time those orders were issued.)

Ryan's argument appears to be that the jurisdictional prohibitions imposed on trial court's in retroactively modifying support orders should actually be interpreted as a prohibition on the court deviating from DCSS's accounting adjustments in which it projected Ryan would be eligible for suspension of support obligations. However, that is not what the law provides. The jurisdictional prohibition against retroactive modification applied to the November 2014 support order—not DCSS's accounting. The 2020 audit was based on the child support obligation as reflected in the November 2014 support order.

We conclude there was no jurisdictional prohibition on the trial court adopting the 2020 audit.

## VI.   The Trial Court Did Not Abuse Its Discretion in Adopting the 2020 Audit

We next consider whether the trial court abused its discretion in adopting the 2020 audit which assessed significant arrears against Ryan. "[I]t is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*Rappleyea v.*

14.

*Campbell* (1994) 8 Cal.4th 975, 987.) A court abuses its discretion if it " ' "exercise[s] its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.) Where the trial court's exercise of discretion is at issue, this court " ' "will only interfere with its ruling if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge reasonably could have reached the challenged result." ' " (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104.)

Here, DCSS was ordered to produce and file with the court an audit. In preparing the audit, DCSS discovered the underlying basis of Ryan's conviction and determined it involved crime(s) for which suspension of support obligations may be disallowed. As mentioned, Ryan does not dispute that his conviction was among those for which suspension of support obligations are disallowed under former section 4007.5. Viewing the evidence most favorably in support of the subject order, we cannot say that no judge could have reasonably reached the same result.

We conclude the trial court did not abuse its discretion in adjudicating and adopting the 2020 audit as part of the subject order.

## VII. Ryan Was Not Denied Due Process

Ryan contends he was denied due process. We disagree.

"The Fourteenth Amendment due process clause states that no state may 'deprive any person of life, liberty, or property without due process of law.' The procedural component of the due process clause ensures a fair adjudicatory process before a person is deprived of life, liberty, or property." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 852.) "Notice and an opportunity to be heard are the fundamental hallmarks of due process whenever 'life, liberty, or property' is put in jeopardy." (*People v. Silva* (2021) 72 Cal.App.5th 505, 523, citing U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, §§ 7 & 15.)

In support of his argument, Ryan states, "I believe it is important to view the proper procedure which would have resulted had the [DCSS] fulfilled its duty at the final family law hearing on November 12, 2014[,] by contesting the application of [former section] 4007.5." He includes reference to the following statement he made at the March 25, 2021 hearing: "Your honor, I never filed for any relief. The issue, here, is due process. If the Department had been there, at the last hearing, prior to my incarceration, in November 2014, and made these argument [*sic*], the Court could have conducted a hearing on earning capacity. It didn't."

Ryan does not cite to any authority for the proposition that DCSS had a duty to argue for, or against, suspending his child support obligations during the 2014 hearings, and we are not aware of any such duty. Moreover, Ryan is not challenging the original support order or the November 2014 support order. He is appealing the subject order issued on March 25, 2021.

From the record before us, it appears Ryan received due process in connection with the subject order. Ryan was present when the trial court ordered the 2020 audit. Ryan was present when the court directed him "to file and serve … Points and Authorities regarding Family Code Section 4007.5" On September 15, 2020, Ryan did, in fact, file a declaration in which he set forth his contentions concerning former section 4007.5.

Ryan appeared at the next scheduled hearing on September 21, 2020. The minutes of that meeting read, in part, "Matter set for a Contested Hearing RE: whether or not 4007.5 Family Court Section applies due to incarceration on OCTOBER 27, 2020, at 10:00 a.m., in Dept. 1-Dinuba." On December 1, 2020, following one or more additional continuances, and after DCSS filed its reply brief in opposition to Ryan's position concerning the application of former section 4007.5, Ryan filed a declaration in answer to DCSS's reply brief in which he further articulated his position with respect to application of former section 4007.5.

16.

On December 14, 2020, Ryan and DCSS appeared before the trial court on ZOOM video. At the hearing, the trial court continued the "Contested Hearing RE: Family Code Section 4007.5" to March 25, 2021.

On March 25, 2021, the contested hearing was held. The minutes from the March 25, 2021 hearing reflect that Ryan was present, was sworn in, and testified at the hearing. The subject order issued thereafter.

Thus, at every stage of the process, Ryan received notice and an opportunity to be heard concerning the application of former section 4007.5. We conclude Ryan was not denied due process.

## DISPOSITION

The March 25, 2021 order after hearing (i.e., the subject order) is affirmed. Costs on appeal are awarded to DCSS.

SMITH, J.

WE CONCUR:


LEVY, ACTING P. J.


FRANSON, J.


17.