Filed 11/12/14 Unmodified version attached

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES FREDRICK MENEFIELD, | F068484 |
| Plaintiff and Appellant, | (Super. Ct. No. 12CECG03127) |
| v. | |
| D.R. FOREMAN et al., | **ORDER MODIFYING OPINION AND DENYING REHEARING** [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

**THE COURT:**

It is ordered that the published opinion filed herein on October 15, 2014, be modified as follows:

On page 8, the last sentence of the second full paragraph beginning with the word "[f]urthermore" is deleted.

On page 8, the following paragraphs are inserted after the second full paragraph:

Menefield disagrees, arguing that the ambiguity must be resolved by construing the word "duplicates" in the context of the entire regulatory scheme. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [each statutory provision must be read not in isolation but in light of the statutory scheme].) In particular, Menefield argues the regulatory provision that delineates the right to appeal and exhaustion clearly demonstrates that inmate appeals are not duplicative if they contain any new issue or information. Section 3084.1, subdivision (b) states:

"Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All lower

level reviews are subject to modification at the third level of review. Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, which is incorporated by reference, and addressed through all required levels of administrative review up to and including the third level. In addition, a cancellation or rejection decision does not exhaust administrative remedies."

We recognize the appeals coordinators would have acted reasonably if they had referred to this provision and used its contents to help define when an appeal "duplicates" an earlier appeal. For example, the appeals coordinators could have construed the term to mean a second appeal does not duplicate an earlier appeal if it presents "any new issue, information, or person." (§ 3084.1, subd. (b).) However, the fact this particular interpretation provides a reasonable way to resolve the ambiguity in the term "duplicates" does not establish the appeals coordinators committed error when they adopted a different reasonable construction. (*In re Cabrera*, *supra*, 55 Cal.4th at p. 690 [only a clearly unreasonable interpretation of an agency's regulations may be overturned].)

Fourth, the application of the appeals coordinators' interpretation of "duplicates" to a particular set of facts requires the appeals coordinators to exercise their personal judgment on whether the degree of overlap among the issues presented was sufficient to deem the subsequent appeal duplicative of the first.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____
Franson, J.

WE CONCUR:

_____
Kane, Acting P.J.

_____
Poochigian, J.

2.

Filed 10/15/14  Unmodified version

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES FREDRICK MENEFIELD, | F068484 |
| Plaintiff and Appellant, | (Super. Ct. No. 12CECG03127) |
| v. | |
| D.R. FOREMAN et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Ralph Nunez, Judge.  (Retired judge of the Fresno Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).

James Fredrick Menefield, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Jessica N. Blonien and Yun Hwa Harper, Deputy Attorneys General, for Defendants and Respondents.

Inmate James Frederick Menefield appeals the denial of his writ of mandate, which sought to compel appeals coordinators at Pleasant Valley State Prison to complete

the processing of an inmate appeal submitted by Menefield. His appeal had been cancelled during the screening process on the ground it was duplicative of an earlier appeal.

Menefield contends the appeals coordinators' duty to process the appeal was ministerial and, because his August 2, 2012, appeal was not duplicative of his June 6, 2012, appeal, they had no discretion to cancel it.

We conclude that appeals coordinators have a ministerial duty to complete the screening of inmate appeals, but exercise discretion when determining if an appeal is duplicative of an earlier appeal. Here, the appeals in question concerned access to the A-Facility chapel by Muslim inmates, but were different in other particulars. Because there was a significant overlap in the issues presented, we conclude the appeals coordinators did not abuse their discretion when they determined the August 2, 2012, appeal was duplicative of Menefield's June 6, 2012, appeal.

We therefore affirm the judgment denying the petition.

## FACTS

In 2002, a jury convicted Menefield of first degree murder with a firearm enhancement, and the Los Angeles County Superior Court sentenced him to a prison term of 50 years to life.

In 2008, Menefield filed a federal civil rights action against prison officials alleging they violated the religious rights of Muslim prisoners. He sought an injunction compelling the prison officials to provide him access to halal meals[1] that included a halal meat option whenever kosher meat was served or, alternatively, allow him to participate

---

[1] One court described the dietary laws of the Islamic faith as specifying all food as either halal (lawful) or haram (unlawful) and stated that pork and pork byproducts, meats not slaughtered according to the Quran, and food prepared with ingredients that are not halal, are considered haram. (*Ahmad v. Department of Correction* (Mass. 2006) 845 N.E.2d 289, 293.)

in the kosher meal program.  In 2009, a federal district court issued a preliminary injunction.  (*Menefield v. Cate* (E.D.Cal. Oct. 5, 2009, No. C 08-00751 CRB) 2009 U.S. Dist. LEXIS 96447, 2009 WL 3234202.)

In 2010, Menefield filed another civil rights action against prison officials. (*Menefield v. Yates* (E.D.Cal. 2010, No. 1:10-CV-02406 MJS).)  Menefield alleged his constitutional rights were violated when officials denied him access to the chapel, banned the use of outside foods at 'Id festivals, and failed to provide equal treatment to Muslim inmates.  (*Menefield v. Yates* (E.D.Cal. Oct. 24, 2012, No. 1:10-CV-02406 MJS) 2012 U.S. Dist. LEXIS 153001, p. 1, 2012 WL 5288796, pp. 1-2.)

That civil rights action was settled in May 2012 when Menefield entered into a written settlement agreement with prison officials.  Menefield agreed to deliver a signed stipulation for voluntary dismissal with prejudice under Federal Rules of Civil Procedure, rule 41(a)(1)(A)(ii).  In exchange for the dismissal, paragraph 2 of the agreement provided:

> "Prison official shall provide Muslim inmates reasonable opportunities to participate in Muslim indoor group religious services, called Ta'leem, Jumu'ah Prayer and the two annual 'Id festivals, taking into account factors such as the number of inmates, available space, safety and security, resources, and administrative considerations, so long as those factors are also considered in determining the access of other religious groups to regularly scheduled group religious activities."

Under the settlement agreement, if Menefield believed prison officials had not complied with the agreement, he was required to submit an inmate appeal (CDCR 602)[2] and exhaust his remedies at the director's level before seeking relief from the district court.

---

**2**     Inmates are required to use "CDCR Form 602 (Rev. 08/09)" when pursuing an administrative appeal.  (Cal. Code Regs., tit. 15, § 3084.2, subd. (a).)

Less than a month after the settlement agreement was signed, Menefield asserted that prison officials were not abiding by its terms. On June 6, 2012, he submitted an appeal that was given log number PVSP-A-12-01726 (June Appeal). The June Appeal asserted (1) prison staff had denied Muslim inmates access to the chapel or an alternate indoor area for weekly Islamic religious services and (2) this failure to accommodate Muslim inmates violated the terms of the settlement agreement.

On August 2, 2012, Menefield submitted a group appeal that was given log number PVSP-A-12-02059 (August Appeal). The August Appeal asserted that Captain A. Walker of A-Facility refused to provide security coverage and access to the prison chapel for Jumu'ah prayer services on Friday, July 27, 2012, when a chaplain was not present. The August Appeal asserted (1) Walker's refusal was contrary to the directions issued by Warden Brazelton in a July 2, 2012, memorandum that addressed the procedures for Ramadan[3] and (2) Walker's refusal was in retaliation for Menefield's filing a lawsuit against him.

On August 9, 2012, Warden Brazelton issued a second level appeal response for the June Appeal. The warden found the appeal lacked merit and there was "no evidence to suggest PVSP is violating the terms of the Settlement Agreement." The response advised Menefield that the issue could "be submitted for a Directors Level of Review, if desired." The warden set forth the factual basis for his response as follows:

> "PVSP has hired a Muslim Chaplain. This Chaplain provides weekly services for the five facilities at PVSP. Specifically he is assigned to Facility A on two Fridays each month. On one of the Fridays that the

---

**3** The memorandum stated that the Jumu'ah prayer service for Friday, July 27, 2012, for A-Yard would be conducted in Facility-A Chapel from 1230 to 1400 hours. The memorandum also stated: "Chaplain A. Johnson will conduct Jumu'ah Prayer Services at 1230 hours on a **weekly rotation schedule** during the Ramadan Program. Custody Staff shall provide supervision in Facility Chapels for the Jumu'ah Prayer Services that **are not** conducted by Chaplain A. Johnson."

4.

Chaplain is not present, another Chaplain is present. When neither Chaplain is present, Facility A Supervisory staff has afforded the Muslim inmates the opportunities to conduct religious services in their assigned Housing Units. Based on the above information, Muslim inmates are being afforded reasonable opportunities to participate in Muslim indoor group religious services on Facility A."

On August 13, 2012, defendant Foreman screened the August Appeal and cancelled it on the ground it duplicated a previous appeal. The one-page document provided to Menefield to notify him of the decision did not identify the previous appeal that had been duplicated by the August Appeal.

## PROCEEDINGS

In September 2012, Menefield filed a petition for writ of mandate against Dino R. Foreman, Juliana Jimenez and Jane Morgan, appeals coordinators at the Pleasant Valley State Prison (collectively, defendants). Menefield's petition requested a writ directing defendants to process the August Appeal at the formal level.

In September 2013, the trial court held an unreported hearing on the petition. Menefield, acting as his own attorney, appeared via CourtCall. After the hearing, the court issued a written order stating:

"The petition for writ of mandate is denied. The Court finds that all appeals submitted by [Menefield] have been properly processed. The request to order the [defendants] to perform their ministerial duty and process the appeals for review and exhaustion is moot."

In October 2013, Menefield filed a notice of appeal. In November, the court filed a judgment in favor of defendants.[4]

---

**4** Pursuant to California Rules of Court, rule 8.104(d)(2), we construe Menefield's premature notice of appeal as perfecting a timely appeal from the November 6, 2013, judgment.

5.

**DISCUSSION**

I.      STANDARD OF REVIEW

Generally, a writ of ordinary mandate will lie when (1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance. (*Munroe v. Los Angeles County Civil Service Com.* (2009) 173 Cal.App.4th 1295, 1301.) When reviewing a trial court's judgment on a petition for ordinary mandate, we apply the substantial evidence test to the trial court's findings of fact and exercise our independent judgment on legal issues, such as the interpretation of statutory or regulatory requirements. (*Ibid*.)

II.      MINISTERIAL DUTIES INVOLVING AN INMATE GREIVANCE

A.      Duty to Screen

Pursuant to California Code of Regulations, title 15, section 3084.5, subdivision (b),[5] an appeals coordinator at a correctional institution "shall screen all appeals prior to acceptance and assignment for review." In this context, the term "appeal" includes the initial inmate grievance, which is submitted by the inmate using CDCR Form 602. (See Cal. Dept. of Corrections & Rehabilitation, Operations Manual, art. 53 [inmate appeals].) Thus, the appeals coordinators had a ministerial duty to screen Menefield's August Appeal. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [a ministerial duty is an obligation to perform a specific act without regard to any personal judgment as to the propriety of the act].) In other words, the appeals coordinators did not have the discretionary authority to ignore Menefield's submission.

---

[5]    All further regulatory references are to title 15 of California Code of Regulations unless otherwise stated.

6.

B.   Discretionary Decisions to Cancel Inmate Appeals

The point of disagreement between the parties is whether Foreman had discretion to cancel the August Appeal. Section 3084.6, subdivision (c) (section 3084.6(c)) provides that "[a]n appeal may be cancelled for any of the follow reasons, which include, but are not limited to …." The subdivision then enumerates eight grounds for cancelling an appeal. The second ground states: "The appeal duplicates an inmate or parolee's previous appeal upon which a decision has been rendered or is pending." The regulation does not define the term "duplicate."

We conclude that the application of section 3084.6(c)(2) to a particular appeal requires an appeals coordinator to exercise discretion (i.e., personal judgment) in determining whether to cancel the appeal.

First, section 3084.6(c) states an "appeal may be cancelled …." As a rule of statutory construction, the word "may" generally connotes discretionary action. (*REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 606; but see, *People v. Ledesma* (1997) 16 Cal.4th 90, 103 (dis. opn. of Mosk, J.) ["may" sometimes refers to the mandatory]; *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1558 [the word "may" can be mandatory].) This general rule of construction provides adequate grounds for the appeals coordinators to interpret the regulation's use of "may" to mean they were granted discretionary authority.

Second, section 3084.6(c) refers to "any of the following reasons, which include, but are not limited to …." This language unambiguously establishes that the eight reasons enumerated in subdivision (c) are not exclusive, which necessarily implies that appeals coordinators are authorized to cancel an appeal for unlisted reasons the appeals coordinator deems are sufficient. This authority to go beyond the regulatory text means that appeals coordinators are required to exercise their personal judgment when applying section 3084.6(c) in certain situations.

Third, the regulation uses the verb "duplicates." This term creates an ambiguity that provides appeals coordinators with flexibility in applying the regulation. The verb "duplicate" is defined as "to do over or again often needlessly." (Merriam-Webster's Collegiate Dictionary (10th ed. 1999) p. 359.) The adjective "duplicate" means "consisting of or existing in two corresponding or identical parts or examples." (*Ibid*.) Because the words "corresponding" and "identical"[6] mean different things, this dictionary definition of "duplicate" presents two different meanings. When these different meanings are applied in the context of inmate administrative appeals, "duplicates" could refer to a subsequent appeal that presents issues that are *identical* to those raised in a previous appeal. Alternatively, it could mean the issues in the second appeal *merely correspond* to those raised in the first appeal.

In this case, the appeals coordinators apparently interpreted the regulatory term "duplicates" to mean a significant, but not complete, overlap in the issues presented by the two appeals. This construction falls within the range of reasonable interpretations and, therefore, is entitled to judicial deference. (*In re Cabrera* (2012) 55 Cal.4th 683, 690 [courts defer to prison official's interpretation of their regulations unless the interpretation is clearly unreasonable].) Furthermore, the application of this interpretation to a particular set of facts requires the appeals coordinators to exercise their personal judgment on whether the degree of overlap among the issues presented was sufficient to deem the subsequent appeal duplicative of the first.

In summary, we disagree with Menefield's position that the appeals coordinators had no regulatory discretion to cancel the August Appeal.

---

**6** Black's Law Dictionary (9th ed. 2009) page 577 defines the verb "duplicate" as "[t]o copy exactly." If this definition of "duplicate" were adopted, Menefield would prevail in this appeal.

8.

C.      Abuse of Discretion

Menefield presents the alternate argument that, if the appeals coordinators had regulatory discretion to cancel an appeal, the defendants did not lawfully or reasonably exercise that discretion in this case.  In other words, Menefield claims the defendants abused their discretion because his appeals did not duplicate one another.  We disagree.

Menefield contends the June Appeal (1) focused on a policy of denying chapel access for routine, weekly religious services and (2) alleged a violation of the settlement agreement.  In contrast, he contends the August Appeal alleges misconduct by a specific staff member, Captain Walker, for not obeying the written policy set forth in Warden Brazelton's July 2, 2012, memorandum.  That memorandum addressed chapel access for Muslim inmates, with or without a chaplain, during the holy month of Ramadan.

In Menefield's view, the fact that both appeals concerned chapel access for Muslim inmates does not establish duplication because (1) the routine religious services at issue in the June Appeal are not like the more important religious services during Ramadan and (2) the interpretation and application of provisions of the *settlement agreement* are different from the interpretation and application of the directives in the *warden's memorandum*.

We agree with Menefield's position that there are differences between the two appeals.  We do not agree that these differences are so compelling that the appeals coordinators could not reasonably determine the August Appeal was duplicative of the June Appeal.  Instead, we conclude the issues presented in the appeals overlapped.  Both concerned access to the chapel by Muslim inmates and balancing that access against the safety and security of the institution in the circumstance presented.  Because there was a significant overlap of issues presented, we conclude the appeals coordinators did not abuse their discretion in determining the August Appeal duplicated the June Appeal.

Therefore, the trial court properly denied the petition for a writ of mandate.

**DISPOSITION**

The judgment is affirmed.

_____

Franson, J.

WE CONCUR:

_____

Kane, Acting P.J.

_____

Poochigian, J.

10.