Filed 1/30/25  Patkins v. Cal. Dept. of Corrections and Rehabilitation CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID C. PATKINS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITAION,<br><br>    Defendant and Respondent. | H052348<br>(Monterey County<br> Super. Ct. No. 21CV004013) |

## I.  INTRODUCTION

David C. Patkins, a self-represented litigant incarcerated in state prison, filed a petition for a writ of mandate compelling respondent California Department of Corrections (CDCR) to remove mail charges of $32.47 that prison officials had imposed on his inmate trust account when he did not meet the definition of an indigent inmate. The trial court denied writ relief on the ground that the CDCR did not have a ministerial duty to remove the mail charges when Patkins subsequently became indigent.

On appeal, Patkins contends that the trial court abused its discretion in ruling that the mail charges should remain an obligation on his trust account until paid because Patkins was not indigent when the charges were incurred.  For the reasons stated below, we determine that the trial court did not err and we will affirm the judgment dismissing the petition for writ of mandate.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Petition for Writ of Mandate*

While incarcerated at the state Correctional Training Facility in Soledad, Patkins filed a petition for writ of mandate in December 2021 naming Warden Luis Martinez as respondent. As a first ground for relief, Patkins alleged that prison officials had illegally charged $32.47 against future deposits to his inmate trust account for materials, copying, and postage although he was exempt from such charges because he was indigent.

The exhibits attached to the writ petition indicated that Patkins had appealed the mail charges to prison officials through the prison grievance procedures. In his appeals, Patkins asserted that he had been forced to pay illegal charges for outgoing confidential legal mail in 2015, 2016, and 2018. Patkins' first appeal was denied as untimely, and his second appeal was denied as duplicative. Patkins' third appeal was denied because the time for the CDCR Office of Appeals to respond had expired.

In support of his illegal mail charge claim, Patkins submitted a declaration dated January 12, 2022, requesting that his indigent status be reconsidered because the balance in his inmate trust account was only 60 cents. Prison officials submitted a certificate of funds in Patkins' trust account dated December 17, 2021, that stated "the average balance in the prisoner's account each month for the most recent 6-month period was: $1,583.47."

As a second ground for relief, Patkins alleged that prison officials had illegally deducted fees of $108.63 from his inmate trust account for account transfers he made after receiving a $1,200 Covid-19 stimulus check. Patkins' grievance of the fee deduction was disapproved by prison officials, and his appeal was denied due to time expired for the Office of Appeals to respond.

Warden Martinez demurred to the writ petition on the grounds that the writ petition was barred for two reasons. First, the writ petition's allegations did not show that he had a nondiscretionary ministerial duty with respect to inmate trust account

2

charges.  Second, Warden Martinez argued that Patkins had an adequate remedy at law, consisting of a petition for a writ of habeas corpus.  Patkins opposed the demurrer and the trial court overruled the demurrer in the November 15, 2023 order.

After Warden Martinez filed an answer to the writ petition, the trial court set the matter for an evidentiary hearing and also set a briefing schedule.

**B.  *The Parties' Trial Court Briefs***

In his opening brief in support of his petition for writ of mandate, Patkins argued that the first ground for relief had merit because he was indigent and prison officials had placed illegal charges of $32.47 on his inmate trust account against future deposits due to an unlawful " 'forever holds' " policy.  Regarding his second ground for relief, Patkins contended that prison officials had illegally charged a ten percent service charge on two account transfers that was inapplicable since the transfers were not purchases.

In his opposition brief, Warden Martinez argued that the writ petition was barred because he did not have a ministerial duty with respect to the administration of inmate trust accounts; he was no longer the warden at the Correctional Training Facility; Patkins had failed to exhaust the administrative remedies available under the CDCR regulations pertaining to the review of inmate grievances; and Patkins had an adequate remedy at law.

Warden Martinez also argued that the writ petition failed on the merits.  Regarding the mail charges of $32.47, the warden contended that the charges were properly assessed as obligations on Patkins' inmate trust account because Patkins was not indigent at the time the charges were made between July 2015 and January 2018.  During that time, the warden asserted, California Code of Regulations, title 15, former section 3162, subdivision (a) provided that an inmate was considered indigent if the inmate's trust account had a balance of $1.00 or less for 30 consecutive days.  It was not until 2019, the warden pointed out, that Penal Code section 5007.7 was enacted to redefine an indigent

inmate as one who had $25 or less in his or her inmate trust account for 30 consecutive days.

In support of his argument that Patkins was not indigent at the time the disputed mail charges were assessed, the warden submitted the declaration of an accountant trainee at the Correctional Training Facility, S. Herrera, who stated that review of Patkins' inmate trust account showed that Patkins would "not have been considered indigent at any point between January 1, 2015 and May 4, 2018, as he did not have a balance of less than $1 for thirty days continuously during that timeframe." Herrera also stated that the mail charges identified by Patkins in his writ petition would remain as a lower priority obligation on his inmate trust account until the charges were paid. Additionally, Herrera stated that review of Patkins' trust account statements showed that he was indigent from May 4, 2018, to December 18, 2020; March 19, 2021, to October 15, 2021; December 5, 2021, to December 28, 2021; and since January 31, 2022, to the date of Herrera's declaration.

Regarding the service fee charges for transfers from Patkins' inmate trust account, Warden Martinez responded that these charges were properly assessed because Patkins transferred funds from his trust account to Access Securepak, a third-party company that allows inmates to order food and other items. The Warden explained that the transferred funds would be used to pay for future orders.

After the first evidentiary hearing, Patkins submitted a supplemental brief reiterating his previous arguments.

### C. *Trial Court Order and Judgment*

After holding a second evidentiary hearing, the trial court issued its May 8, 2024 order granting the writ petition in part and denying it in part. In the order, the trial court also allowed Patkins to substitute the CDCR as respondent for named respondent Warden Martinez.

4

At the outset, the trial court determined, relying on *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, that "mandamus may be used to order the cancellation of improper charges for indigent mail and the return of funds to [Patkins'] inmate trust account."

However, the trial court rejected Patkins' claim that that prison officials had improperly added mail charges of $32.47 to his inmate trust account because he was indigent. Based on the declaration of Herrera, the trial court found that Patkins was not indigent when those charges were added in 2015, 2016, and January 2018, although he was indigent at later dates. The trial court also rejected Patkins' contention that his obligation to pay the mail charges of $32.47 was extinguished when he later became indigent, finding there was no regulation providing that previous charges are excused once an inmate becomes indigent.

Regarding Patkins' second ground for relief—the claim that prison officials illegally imposed a ten percent service charge on two transfers from his inmate trust account to Access Securepak—the trial court ruled that Patkins was correct. The trial court determined that because Patkins had moved the funds to Access Securepak without purchasing any items, the ten percent service charge was premature and improperly deducted from his account. The court therefore ordered the CDCR "to return the amount of $108.63 to [Patkins'] inmate trust account."

A judgment of dismissal of the petition for writ of mandate was entered on May 31, 2024.

### III. DISCUSSION

On appeal, we understand Patkins to contend that the judgment should be reversed and writ relief granted because the trial court abused its discretion in ruling that the mail charges of $32.47 should remain an obligation on his trust account until paid because Patkins was not indigent when the charges were incurred. Patkins does not raise any issues with respect to the service fees charged for transactions to his inmate trust account.

5

We will begin our analysis of these contentions with an overview of the remedy of a writ of mandate and the applicable standard of review.

**A.** *Writ of Mandate*

A traditional writ of mandate lies "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station. . . ." (Code Civ. Proc., § 1085, subd. (a); *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.) Under Code of Civil Procedure section 1086, "[t]he writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law."

Thus, "a writ of ordinary mandate will lie when (1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance. [Citation.]" (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 216-217 (*Menefield*).) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' [Citation.]" (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.)

The standard of review is well established: "When reviewing a trial court's judgment on a petition for ordinary mandate, we apply the substantial evidence test to the trial court's findings of fact and exercise our independent judgment on legal issues, such as the interpretation of statutory or regulatory requirements. [Citation.]" (*Menefield*, *supra*, 231 Cal.App.4th at p. 217.)

**B.** *Indigent Inmate Mail Charges*

We next provide an overview of the rules governing indigent inmate mail charges. The CDCR regulations governing inmate mail charges provide in part that "[u]pon the request of an incarcerated person, . . . writing paper, envelopes, a writing implement, and the postage required for five (5) one-ounce First-Class letters per week . . . shall be

6

supplied." (Cal. Code Regs., title 15, § 3138, subd. (a).)[1] "Indigent envelopes issued to an incarcerated person become their property. The incarcerated person shall be allowed to utilize the envelopes regardless of current financial status." (*Id.*, subd. (d).) "A charge shall not be placed against future deposits to the incarcerated person's trust account to recover the cost of materials, copying, or postage provided, while the incarcerated person was indigent." (*Id.*, subd. (h)(3).) Also, "[t]he cost of postage for mailing documents to the courts shall be charged against an incarcerated person's trust account unless the incarcerated person is indigent at the time the documents are submitted for mailing." (§ 3165, subd. (d).)

Before 2019, former section 3133, subdivision (a)(5) provided that "the definition of indigent inmate is an inmate who has $ 1.00 or less in their Inmate Trust Account for 30 consecutive days." Similarly, former section 3162, subdivision (a) provided, before 2019, that "an indigent inmate means an inmate who currently has and for the previous 30 consecutive days has maintained $ 1.00 or less in his or her inmate trust account."

However, the definition of indigent inmate was revised in 2019 when Penal Code section 5007.7 was enacted. (Stats. 2018, ch. 764, § 1.) Penal Code section 5007.7 states: "An inmate who has maintained an inmate trust account with twenty-five dollars ($25) or less for 30 consecutive days shall be deemed indigent. An indigent inmate shall receive basic supplies necessary for maintaining personal hygiene. An indigent inmate shall be provided with sufficient resources to communicate with and access the courts, including, but not limited to, stamps, writing materials, envelopes, paper, and the services of a notary for the purpose of notarizing a signature on a document, as required."

Consequently, for purposes of charges relating to mail, an indigent inmate is currently defined as "an incarcerated person who has maintained a trust account with

---

[1] All further references to regulations are to title 15 of the California Code of Regulations unless otherwise indicated.

twenty-five dollars ($25) or less for 30 consecutive days." (§ 3000; see also § 3162, subd. (a); § 3138; § 3165.)

C. *Analysis*

We understand Patkins to argue the trial court erred because the mail charges of $32.47 should have been removed as an obligation on his inmate trust account when he became indigent, and because a " 'forever holds' " policy is unlawful.[2]

The CDCR responds that the trial court properly ruled that the CDCR does not have a ministerial duty to expunge previously incurred charges on an inmate's trust account when the inmate becomes indigent in the absence of a statute or regulation that requires retroactive expungement.

We agree that the trial court did not err in ruling that Patkins' obligation to pay mail charges of $32.47 was not extinguished when he later became indigent. Patkins does not dispute that substantial evidence, consisting of the declaration of accountant trainee Herrera, established that Patkins was not indigent when he incurred the disputed mail charges in 2015, 2016, and 2018. (See *Menefield*, *supra*, 231 Cal.App.th at p. 217 [substantial evidence standard of review].) Herrera's review of Patkins' inmate trust account statements showed that he did not have an account balance of less than $1 for thirty days continuously when the mail charges were incurred between July 2015 and January 2018.

As we have discussed, prior to 2019 the CDCR regulations governing inmate mail charges provided that the definition of an indigent inmate for mail-related purposes was an inmate who had $1.00 or less in their inmate trust account for 30 consecutive days. (Former § 3133, subd. (a)(5); former § 3162, subd. (a).) Accordingly, Patkins cannot

---

[2] Patkins' request for judicial notice is granted as to the various court documents and legislative materials that were included in the trial court record, and denied as to those documents that were not included in the trial court record. (Evid. Code, § 452, subds. (c), (d); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444.)

show that the CDCR erred in imposing mail charges of $32.47 as an obligation on his inmate trust account when he did not meet the definition of an indigent inmate.

We are also not convinced by Patkins' contention that the mail charges of $32.47 should have been removed as an obligation on his inmate trust account when he later became indigent. As the trial court noted, Patkins has not referred to any statute or regulation that would authorize removal of mail charges from an inmate trust account when the inmate subsequently becomes indigent. Moreover, we determine that Penal Code section 5007.7, which, as we have discussed, was enacted in 2019 to revise the definition of an indigent inmate to "[a]n inmate who has maintained an inmate trust account with twenty-five dollars ($25) or less for 30 consecutive days," is not retroactive. " '[It] is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' [Citation.]" (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207; accord, *People v. Burgos* (2024) 16 Cal.5th 1, 11.) Having reviewed the statutory language and the legislative history of Penal Code section 5007.7, we find no legislative intent to make the revised definition of an indigent inmate retroactive. (See, e.g., Concurrence in Sen. Amend to Assem. Bill 2533 (2017-2018 Reg. Sess.) August 17, 2018.)

For these reasons, we conclude that the trial court did not err in denying Patkins' petition for a writ of mandate in part, and we will affirm the judgment. Having reached this conclusion, we need not address any of the other issues regarding mail handling and fees which we understand Patkins to attempt to raise in his briefs on appeal. As the CDCR notes, these issues were not raised below and therefore we may not consider them for the first time in this appeal. (See *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.)

## IV. DISPOSITION

The May 31, 2024 judgment of dismissal is affirmed.  The parties shall bear their own costs on appeal.

_____

BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

***Patkins v. California Department of Corrections and Rehabilitation***
**H052348**