Filed 9/24/25  Rodriguez v. Dept. of Corrections and Rehabilitation CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOSE CARLOS RODRIGUEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>Defendant and Respondent. | F086402<br><br>(Super. Ct. No. 19CECG01409)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Stephanie L. Negin, Judge.

Jose Carlos Rodriguez, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Julie A. Malone and Heather M. Heckler, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Jose Carlos Rodriguez, an incarcerated inmate serving an indeterminate 27 years to life sentence, filed a petition for writ of mandate against the California Department of Corrections and Rehabilitation (CDCR), in the Fresno County Superior Court. Rodriguez sought to compel CDCR to advance his youth offender parole eligibility date under the youth offender parole statute, Penal Code section 3051. Rodriguez argued that CDCR had a ministerial duty to advance his youth offender parole eligibility date by applying a range of credits under recently promulgated CDCR regulations. The trial court denied Rodriguez's petition. We affirm the trial court.

## RELEVANT CHRONOLOGY AND STATUTORY BACKGROUND

In 2008, Rodriguez was convicted by a jury in Los Angeles of oral copulation of a child under 10 and forcible lewd act on a child. (Pen. Code,[1] §§ 288.7, subd. (b), 288, subd. (b)(1).) He was sentenced to consecutive terms on the two counts for an aggregate sentence of 27 years to life.[2] Rodriguez was committed to state prison on August 8, 2008. He was 21 years old.

In 2014, the Legislature created a new youth offender parole mechanism for youth offenders, by adding section 3051 to the Penal Code. (Senate Bill No. 260 (2013-2014 Reg. Sess.) (Senate Bill 260); Stats. 2013, ch. 312, § 4.) Eventually, after various amendments and as relevant here, section 3051 defined youth offenders as offenders who committed a qualifying offense while under the age of 26. (§ 3051, subd. (a)(1).)

Section 3051 advances a youth offender's eligibility for parole consideration (youth parole eligibility date or YPED)—exclusive of credits—to a specified year of his

---

[1] Subsequent undesignated statutory references are to the Penal Code.

[2] This factual synopsis is drawn from the Second District Court of Appeal's unpublished opinion in Rodriguez's direct appeal. (*People v. Rodriguez* (Oct. 1, 2009, B209640) [nonpub. opn.].)

incarceration, depending on his controlling offense.[3]  (§ 3051, subd. (b)(1)-(b)(4).)  For youth offenders serving a determinate term on their controlling offenses, the YPED is "the first day of the person's 15th year of incarceration."  (§ 3051, subd. (b)(1).)  For youth offenders serving a life term lower than 25 years to life on their controlling offenses, the YPED is the "the first day of the person's 20th year of incarceration."  (§ 3051, subd. (b)(2).)  For youth offenders serving a life term of 25 years to life, or higher, on their controlling offenses, the YPED is "the first day of the person's 25th year of incarceration."  (§ 3051, subd. (b)(3).)

On March 29, 2016, CDCR notified Rodriguez that he met the youth offender criteria under the youth offender parole statute, section 3051, and was entitled to parole consideration.  CDCR notified Rodriguez that his youth offender parole eligibility date (YPED), under the youth offender parole statute, was January 19, 2027.  CDCR's YPED calculation sheet reflected that the prison term on Rodriguez's controlling offense was 19 years.

Thereafter, in November 2016, voters passed Proposition 57, which added section 32 to article I of the California Constitution.  (Prop. 57, § 3.)  The goal of the newly added constitutional provision was to "enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order."  (Cal. Const., art. I, § 32, subd. (a).)  In this vein, newly-added article I, section 32, subdivision (a)(2) provided:  "Credit Earning:  The Department of Corrections and Rehabilitation shall have [the] authority to award credits earned for good behavior and approved rehabilitative or educational achievements."  Article I, section 32, subdivision (b) further provided:  "The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions."

---

[3]  " 'Controlling offense' means the offense or enhancement for which any sentencing court imposed the longest term of imprisonment."  (§ 3051, subd. (a)(2)(B).)

In accordance with the new constitutional mandate, starting in 2017 and 2018, CDCR enacted a suite of new credit-earning regulations.[4] The new regulations enabled incarcerated persons to earn credits for, respectively, good conduct, milestone completion, rehabilitative achievement, educational merit, and extraordinary conduct (collectively, Proposition 57 credits). (Cal. Code Regs., tit. 15, §§ 3043 (credit earning, general), 3043.2 (good conduct), 3043.3 (milestone completion), 3043.4 (rehabilitative achievement), 3043.5 (educational merit), 3043.6 (extraordinary conduct).)

At the time, CDCR clarified: "As a general matter, earning credit helps an inmate serving a determinate term advance his or her release date and earning credit helps an inmate serving an indeterminate term advance the date of his or her initial parole consideration before the Board." (Cal. Dept. of Corrections, Proposition 57 Regulations, Public Comment Period: Responses to Frequent Comments, Nov. 29, 2017.) However, CDCR noted that "CDCR has *not* amended the regulations to allow credits to apply to the timing of a *youth offender hearing* before the Board of Parole Hearings." (*Ibid*., italics added.) CDCR explained its reasoning: "[A]ccording to Penal Code section 3051, youth offenders are to be provided an earlier opportunity for a parole consideration hearing than otherwise provided by law. This is a unique opportunity for a youth offender to be heard by the Board of Parole Hearings and, if granted parole, be released *prior to the completion* of their [otherwise] determinate term or the minimum duration of their life term. The youth offender law specifically set forth that these earlier-than-normal parole consideration hearings shall occur after the inmate has served 15, 20, or 25 continuous years of incarceration, depending on the sentence imposed by the court [on his controlling offense]. While the purpose of the statutory youth offender law was to provide an opportunity for parole consideration after 15, 20 or 25 years of incarceration

___

[4] Although some regulations were formally adopted in 2022, many were in effect on an emergency basis starting in 2017.

for youth offenders with extremely long sentences, *it did so without regard to credits earned*." (*Ibid.*, italics added.)

Thus, section 3043, subdivision (a) of the California Code of Regulations clarified that the newly minted credits would only be applied to (1) "advance an incarcerated person's release date if sentenced to a determinate term," or (2) "advance an incarcerated person's initial parole hearing date pursuant to subdivision (a)(2) of section 3041 of the Penal Code if sentenced to an indeterminate term with the possibility of parole." Section 3041 sets forth the regular parole mechanism for all indeterminately sentenced inmates regardless of age, as distinct from the youth offender parole mechanism that provides an additional parole mechanism solely for youthful offenders. In short, CDCR's new credit earning regulations applied to the parole mechanism set forth in section 3041, but not to the youth offender parole mechanism of section 3051.

## RODRIGUEZ'S PETITION FOR WRIT OF MANDATE

Thereafter, on April 22, 2019, Rodriguez filed "a petition for writ of mandate/prohibition and declaratory relief" (writ petition or petition for writ of mandate) in the Fresno County Superior Court. (Capitalization omitted.) At the time, Rodriguez was an inmate at Pleasant Valley State Prison in Coalinga.

In his writ petition, Rodriguez argued that under article I, section 32 of the California Constitution, section 3051 and CDCR's newly adopted credit-earning regulations, CDCR had a ministerial duty to apply all types of Proposition 57 credits to advance an indeterminately sentenced youth offender's YPED (which arises under the youth offender parole mechanism). Rodriguez sought an order compelling CDCR to stop enforcing an ostensible policy or underground regulation of *not* applying such credits to advance the parole eligibility dates of youth offenders under section 3051. Stated differently, Rodriguez sought an order compelling CDCR to apply the full range of the new credits to advance the YPEDs of all indeterminately sentenced youth offenders.

5.

On October 29, 2021, CDCR filed an answer to Rodriguez's petition for writ of mandate, denying all allegations. CDCR asserted two affirmative defenses. First, CDCR asserted it did "not have a mandatory duty to apply credits to advance the YPED of an inmate serving an indeterminate prison term." Second, CDCR asserted it "complied with the APA in promulgating regulations pursuant to [section 32] of Article I of the California Constitution and that [the] implementation of those regulations [did] not constitute an underground regulation." CDCR requested that Rodriguez's "petition for writ [of] mandate be denied and dismissed."

Meanwhile, effective January 1, 2020, the Legislature had passed Assembly Bill No. 965 (2019-2020 Reg. Sess.) (Assembly Bill 965), which added section 3051, subdivision (a)(2)(C) to the youth offender parole statute. (Stats. 2019, ch. 577, § 2.) Section 3051, subdivision (a)(2)(C) provided: " 'Youth parole eligible date' is the earliest date upon which a youth offender is eligible for release on parole at a youth offender parole hearing." It further provided that "youth offenders are entitled to their initial youth offender parole hearing within six months of their youth parole eligible date [YPED]," "unless previously released or entitled to an earlier parole consideration hearing pursuant to any other law." (§ 3051, subd. (a)(2)(C).)

Assembly Bill 965 further added section 3051, subdivision (j) to the youth offender parole statute. Section 3051, subdivision (j) provided, with regard to youth offenders entitled to a youth offender parole hearing, that CDCR "*may* authorize [such persons] to obtain an earlier youth parole eligible date by adopting regulations pursuant to subdivision (b) of Section 32 of Article I of the California Constitution [as added by Proposition 57]." (Italics added.)

In 2022, pursuant to section 3051, subdivision (j), CDCR promulgated amended credit-earning regulations, including California Code of Regulations, title 15, sections 3043 (credit earning, general) and 3043.5 (educational merit). Pursuant to the amended

regulations, educational merit credits awarded under California Code of Regulations, title 15, section 3043.5 would now "advance an incarcerated person's Youth Parole Eligible Date [YPED]." (Cal. Code Regs., tit. 15, § 3043, subd. (f).) However, the amended regulations specified that good conduct, milestone completion, rehabilitative achievement, and extraordinary conduct credits "as set forth in sections 3043.2, 3043.3, 3043.4, and 3043.6 … *shall not* advance an incarcerated person's Youth Parole Eligible Date [YPED]." (Cal. Code Regs., tit. 15, § 3043, subd. (f), italics added.) In addition, the amended regulations defined a youth offender's YPED as "the earliest date on which a youth offender is eligible for a youth offender parole hearing *under Penal Code section 3051, subsection (b).*" (Cal. Code Regs., tit. 15, §§ 2441, subd. (b), 3498.2, subd. (b), italics added.)

### TRIAL COURT'S RULING ON RODRIGUEZ'S WRIT PETITION

In a detailed, written ruling filed on April 3, 2023, the trial court denied Rodriguez's writ petition.

The court summarized the issues before it: "[Rodriguez] submitted this writ of mandate challenging [CDCR's] statewide policy of not awarding and applying Good Conduct Credit, Milestone Completion Credit, Rehabilitative Achievement Credit, Educational Merit Credit or Extraordinary Conduct Credit to advance [a youth offender's] Youth Offender [Parole Eligibility] Date [YPED]." The court noted that Rodriguez had earned these types of credits. The court added: "[Rodriguez] sought a court order directing CDCR to 'abide by the plain language of its own Prop[osition] 57 credits regulation and advance not only [his] [YPED] when Prop[osition] 57 credits are earned and awarded, but also the [YPEDs] of all other CDCR inmates that are similarly situated – that is, lifer inmates who are youth offenders under California Penal Code [section] 3051."

7.

*Trial Court Ruled That Rodriguez's Claim That CDCR Was Not Applying Proposition 57 Credits to Advance His YPED Is Moot*

The court first addressed Rodriguez's principal complaint that CDCR was not applying Proposition 57 credits to advance his YPED. Preliminarily, the court clarified that, in resolving Rodriguez's claims, it would "apply the law as it currently exists," and not "the law in effect when the petition was filed." (See *Flores v. Department of Transportation* (2022) 76 Cal.App.5th 678, 682 [holding that amended version of statute applied to case on appeal].) The court stated it was therefore important to consider "the timeline of this case and applicable … law."

The court noted that while the instant matter was pending, "CDCR enacted various emergency regulations" pursuant to amendment of the youth offender parole statute by Assembly Bill 965, which added section 3051, subdivision (j) to the existing statute. The court observed that, as of January 1, 2022, "CDCR's regulations provide that educational credits advance an inmate's [YPED] and specifically state that good conduct credits, milestone [completion] credits, extraordinary conduct credits, and [rehabilitative achievement] credits do not."

Taking judicial notice, sua sponte, of information pertaining to Rodriguez on CDCR's online "inmate locator" website, the court added: "[Rodriguez has] benefitted from CDCR's regulations. At the time the petition was filed in 2019, Petitioner Rodriguez had an established YPED that was set for January 2027. Based on educational merit credits he earned, his [youth offender] parole date was advanced … to November 2025." The court concluded: "As CDCR has enacted credit-earning regulations in accordance with the discretion given to them under Article I, section 32 [of the state Constitution], Petitioner's claims are moot."

***Trial Court Rejected Rodriguez's Attempt to Conflate His Respective Parole Hearing
Dates Under Sections 3051 and 3041***

The trial court next addressed Rodriguez's subsidiary arguments. The court
addressed Rodriguez's claim that "an indeterminately sentenced youthful offender's
youth parole eligibility date is their initial parole hearing [date] under Penal Code section
3041, subdivision (a)(2)," when his YPED precedes his minimum eligible parole date
[MEPD] under section 3041.[5] Although confusing, the gist of Rodriguez's argument was
that the full range of Proposition 57 credits should be applied to advance not only his
parole hearing date under section 3041, but also his parole hearing date under section
3051.

The trial court rejected the proposition that "a YPED is synonymous with a
minimum [eligible parole] date [MEPD]" as defined in section 3041, as posited by
Rodriguez. The court drew a clear distinction between an inmate's YPED under section
3051 and his MEPD under section 3041, stating: "Simply put, a minimum [eligible
parole] date under Penal Code section 3041 is the date indeterminately-sentenced
offenders are eligible for parole consideration by the Board *based on the [complete]
sentence imposed by the court*, less any applicable credit." (Italics added.) In contrast,
an inmate's YPED is statutorily prescribed in section 3051 and is based on broad
categories of sentences linked to applicable controlling offenses. (See § 3051, subd.
(b)(3).) The court explained that an inmate's MEPD "should not be conflated" with his
YPED, because each of these parole eligibility dates arises under *distinct* statutory parole

---

[5] Section 3041 codifies the regular parole mechanism applicable to all
indeterminately sentenced inmates, regardless of age. More specifically, section 3041,
subdivision (a)(4) provides that "an inmate shall not be released before reaching his or
her minimum eligible parole date [MEPD] … unless the inmate is eligible for earlier
release pursuant to his or her youth offender parole eligibility date [YPED] or elderly
parole eligible date."

9.

mechanisms and CDCR has promulgated *different* regulations for each, respective type of parole mechanism.

***Trial Court Rejected Rodriguez's Claim That CDCR Had a Ministerial Duty to Apply All Proposition 57 Credits to Advance His YPED***

Next, the trial court addressed Rodriguez's argument that "section 3051 impose[s] a ministerial duty on CDCR to apply [all] Proposition 57 credits to advance a youthful offender's 'Youth Parole Eligibility Date.' " The court rejected this argument, observing: "[T]he plain language of both Proposition 57 and Penal Code section 3051 grants CDCR sole authority to award such credits." The court added: "It is by the plain language of Penal Code section 3051 and Proposition 57 that no ministerial duty on CDCR to apply [particular] credits to advance a youthful offender's parole eligibility date is imposed."

On a different note, the trial court observed: "This court also considered whether the decisions of CDCR regarding the application of credits was arbitrary, capricious, entirely lacking in evidentiary support or unlawfully or procedurally unfair." The court cited *Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1265, which states: "Courts exercise limited review 'out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority.' " The court ruled: "Under the facts alleged, this Court does not find there was an abuse of discretion. As set forth above, the Legislature gave CDCR the authority and discretion to adopt regulations to further the intent of Proposition 57 and Penal Code section 3051 and they did so accordingly."

In short, the court concluded that neither the California Constitution nor section 3051 imposed on CDCR a ministerial duty to apply particular credits to advance an indeterminately sentenced person's YPED and that CDCR did not abuse its discretion or exceed its authority in promulgating the credit-earning regulations at issue.

The trial court "ORDERED and ADJUDGED that the Petition for Writ of Mandate is DENIED."

This appeal followed.

## DISCUSSION

### I. Standard of Review

"Generally, a writ of ordinary mandate will lie when (1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance." *Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 216-217.) "When reviewing a trial court's judgment on a petition for ordinary mandate, we apply the substantial evidence test to the trial court's findings of fact and exercise our independent judgment on legal issues, such as the interpretation of statutory or regulatory requirements." (*Ibid.*)

"As a general matter, courts will be deferential to government agency interpretations of their own regulations, particularly when the interpretation involves matters within the agency's expertise and does not plainly conflict with a statutory mandate." (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 490.)

### II. Recent Developments

In connection with and the day before the oral argument in this matter, CDCR filed a notice of potential mootness of appeal (notice).[6] CDCR's notice clarified that Rodriguez's MEPD was July 16, 2026, and his YPED was July 23, 2026. Under section 3041, subdivision (a)(2), a qualifying inmate receives an initial parole hearing one year prior to his MEPD. Alternatively, under section 3051, subdivision (a)(2)(C), a qualifying inmate receives an initial parole hearing within six months of his YPED. CDCR's notice

---

[6] CDCR's notice was filed on September 16, 2025. Oral argument took place on September 17, 2025.

11.

confirmed that Rodriguez had already had an initial parole hearing based on his MEPD and section 3041, subdivision (a)(2). Specifically, Rodriguez's initial parole hearing had taken place on August 7, 2025, several weeks before the oral argument in this matter.

CDCR's notice further clarified: "At that hearing, the Board of Parole Hearings (Board) considered Rodriguez's youth offender factors in the same manner it would have if the hearing had been set pursuant to his YPED."[7] (See § 4801, subd. (c) [at all parole hearings for qualifying inmates aged 25 or younger, the Board "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law"].) The Board issued a proposed parole consideration decision denying parole to Rodriguez for three years, subject to a standard "decision review" process.

CDCR's notice added: "Rodriguez's August 7, 2025 hearing moots this appeal because, even if successful, the addition of credits to Rodriguez's YPED will have no impact. Namely, additional credits and an earlier YPED will not provide Rodriguez an earlier *initial parole consideration hearing* because that hearing occurred on August 7, 2025." (Italics added.) CDCR's notice also noted: "Rodriguez is now in the Board's hearing cycle. The proposed parole decision denied Rodriguez parole for three years. [Citation.] Rodriguez's subsequent parole consideration hearing will be scheduled three years from the parole denial unless the hearing is advanced through the Board's administrative review process or in response to a petition to advance." (See § 3041.5, subd. (b)(4) and (d)(1).)

Subsequently, at oral argument, Rodriguez acknowledged that his initial parole hearing had occurred on August 7, 2025, based on his MEPD. He further acknowledged

---

[7] CDCR submitted with its notice, the Board's proposed parole consideration decision. We hereby take judicial notice of the Board's proposed parole consideration decision. The proposed parole consideration decision stated: "*The youth offender factors found in Penal Code Section 4801 shall be applied at this hearing.*" (Italics added.)

that although his initial parole hearing was triggered by his MEPD, the Board nevertheless was required, under section 4801, subdivision (c), to consider youth offender factors at the hearing. Finally, he acknowledged that he was *not* entitled to a *separate* initial parole hearing tied to his YPED. Rather, in light of his August 7, 2025 initial parole hearing, he was already in the Board's hearing cycle and was now subject to the rules governing that cycle.

Based on the parties' representations, we agree that Rodriguez's claims are potentially moot but have nonetheless addressed the claims.

## III. Trial Court Properly Resolved Rodriguez's Writ of Mandate Petition

Upon applying the independent judgment standard of review, we agree with the trial court's resolution of Rodriguez's claims.

### A. Rodriguez's Claim That CDCR Did Not Apply Proposition 57 Credits to Advance the YPEDs of Indeterminately Sentenced Inmates Is Moot

The gravamen of the instant action is Rodriguez's complaint that CDCR was not applying Proposition 57 credits to advance his YPED. However, as the trial court noted, as of January 1, 2022, "CDCR's regulations provide that educational credits advance an inmate's [YPED] and specifically state that good conduct credits, milestone [completion] credits, extraordinary conduct credits, and [rehabilitative achievement] credits do not." In light of the amended regulations adopted by CDCR in 2022, the trial court found that Rodriguez's claims were moot. We agree with the trial court.

To the extent Rodriguez argues CDCR should be compelled to apply the full range of Proposition 57 credits encompassed in the recent regulations to advance his YPED, his argument is foreclosed by the plain language of the regulations. By their plain terms, the CDCR regulations apply the full range of Proposition 57 only to initial parole hearings arising under section 3041. (See Cal. Code Regs., tit. 15, § 3043, subd. (a).) Furthermore, as noted above, as of January 2022, the regulations were amended to further

13.

provide that educational merit credits would advance an inmate's YPED, but good conduct, milestone completion, rehabilitative achievement, and extraordinary conduct credits would not. (See Cal. Code Regs., tit. 15, § 3043, subd. (f).) In short, under the regulatory scheme, the full range of Proposition 57 credits are not applied to advance a section 3051 youth offender parole hearing. (See *In re Nguyen* (2024) 107 Cal.App.5th 15, 28 ["Based on the already significant benefit afforded only to youth offenders and on Penal Code section 3051's careful calibration of the YPED to the sentence on the controlling offense, [CDCR] could rationally conclude that youth offenders should not benefit further from an award of credit other than educational merit credit."].)

" 'If the plain language [of the regulation] is clear and unambiguous, our task is at an end and there is no need to resort to the canons of construction or extrinsic aids to interpretation.' " (*In re Lambirth* (2016) 5 Cal.App.5th 915, 922].) Here, the plain language of the applicable regulations forecloses Rodriguez's claims.

### B. *Rodriguez's Initial Parole Hearing Dates Under Sections 3051 and 3041, Respectively, Are Separate and Distinct, Not Synonymous*

Next, we conclude the trial court correctly rejected Rodriguez's claim that "an indeterminately sentenced youthful offender's parole eligibility date is their initial parole hearing [date] under Penal Code section 3041, subdivision (a)(2)," when his YPED precedes his minimum eligible parole date [MEPD] under section 3041. Rodriguez argues that the putative interchangeability of an inmate's YPED and MEPD in this circumstance requires CDCR to apply the full range of Proposition 57 credits to advance not only his parole hearing date under section 3041, but also his parole hearing date under section 3051.

This argument is difficult to understand because it is meritless. The trial court drew a clear distinction between an inmate's YPED under section 3051 and his MEPD under section 3041, stating: "Simply put, a minimum [eligible parole] date under Penal

14.

Code section 3041 is the date indeterminately-sentenced offenders are eligible for parole consideration by the Board *based on the [complete] sentence imposed by the court*, less any applicable credits." (Italics added.) In contrast, an inmate's YPED is statutorily prescribed in section 3051, and is based on broad categories of sentences linked to applicable controlling offenses. (See § 3051, subd. (b)(3).) The trial court explained that an inmate's MEPD "should not be conflated" with his YPED, because each of these parole eligibility dates arises under *distinct* statutory parole mechanisms and CDCR had promulgated *different* regulations for each respective type of parole mechanism. We agree with the trial court.

Furthermore, Rodriguez's argument is foreclosed by the plain terms of sections 3041 and 3051. Section 3041, subdivision (a)(4) provides that "an inmate shall not be released before reaching his or her minimum eligible parole date [MEPD] … unless the inmate is eligible for earlier release pursuant to his or her youth offender parole eligibility date [YPED] or elderly parole eligible date." Thus, section 3041 itself draws a distinction between an offender's MEPD and YPED. Similarly, section 3051, subdivision (a)(2)(C) clearly states that an inmate's YPED tied to the youth offender parole mechanism: " 'Youth eligible parole date' is the earliest date upon which a youth offender is eligible for release on parole at a youth offender parole hearing." Finally, CDCR's amended regulations define a youth offender's YPED as "the earliest date on which a youth offender is eligible for a youth offender parole hearing *under Penal Code section 3051, subsection (b)*." (Cal. Code Regs., tit. 15, §§ 2441, subd. (b), 3498.2, subd. (b), italics added.)

In sum, Rodriguez's attempt to conflate an inmate's YPED and MEPD in certain circumstances, is unpersuasive.

15.

### C. CDCR Does Not Have a Ministerial Duty to Apply the Full Range of Proposition 57 Credits to Advance Rodriguez's YPED

Rodriguez contends that section 3051 imposes a ministerial duty on CDCR to apply Proposition 57 credits to advance a youth offender's YPED. He further argues that, to the extent CDCR's regulations do not apply the full range of Proposition 57 credits to advance a youth offender's YPED, they are improper. We disagree.

" ' "In order for a regulation to be valid, it must be (1) consistent with and not in conflict with the enabling statute and (2) reasonably necessary to effectuate the purpose of the statute." ' " (*In re Canady* (2020) 57 Cal.App.5th 1022, 1030 (*Canady*).) CDCR's credit-earning regulations were implemented pursuant to article I, section 32 of the California Constitution as added by Proposition 57, and section 3051, subdivision (j).

Article I, section 32, subdivision (a)(2) of the California Constitution provides: "The Department of Corrections and Rehabilitation shall have [the] authority to award credits earned for good behavior and approved rehabilitative or educational achievements." Section 3051, subdivision (j) provides, with regard to youth offenders entitled to a youth offender parole hearing, that CDCR "*may* authorize [such persons] to obtain an earlier youth parole eligible date by adopting regulations pursuant to … Section 32 of Article I of the California Constitution." (Italics added.) Here, CDCR was given sole authority and ample discretion to adopt credit-earning regulations by article I, section 32 of the state Constitution and section 3051, subdivision (j). (See, e.g., *Canady*, *supra*, 57 Cal.App.5th at p. 1034 ["[t]he broad and permissive language of article I, section 32, subdivision (a)(2) suggests that the voters intended for [CDCR] to have substantial discretion in determining how credits are applied"].) Rodriguez has not shown that CDCR's regulations represent an abuse of discretion under either the state Constitution or section 3051, subdivision (j).

The purpose of mandamus is to enforce a clear, ministerial duty. (Code Civ. Proc., § 1085.) We are not persuaded by Rodriguez's arguments that CDCR has a

ministerial duty to advance his YPED based on the full range of Proposition 57 credits he has earned. Neither the California Constitution, nor section 3051, imposes a ministerial duty on CDCR to apply particular credits to advance a youth offender's YPED.

We conclude the trial court properly found CDCR did not have a ministerial duty to apply all types of Proposition 57 credits to advance Rodriguez's YPED. In turn, the court properly denied Rodriguez's petition for a writ of mandamus.

### D. *Rodriguez Has Not Shown That Trial Court Erred in Referencing His YPED as Reflected on CDCR's "Inmate Locator" Website*

Rodriguez also appears to challenge the trial court's reference to his YPED as reflected on CDCR's "Inmate Locator" website. The court, on its own motion, took judicial notice of the YPED listed on CDCR's "Inmate Locator" website, observing in its ruling: "[Rodriguez has] benefitted from CDCR's regulations. At the time the petition was filed in 2019, Petitioner Rodriguez had an established YPED that was set for January 2027. Based on educational merit credits he earned, his parole date was advanced pursuant to Title 15, Section 3043.5, subdivision (g) to November 2025." (Fn. omitted.)

In a background section of his opening brief in which he describes the trial court's ruling, Rodriguez states in passing that the court should have afforded him an evidentiary hearing before concluding he had received the *benefit* of CDCR's amended credit-earning regulations. Specifically, Rodriguez states: "Rodriguez requests remand for an evidentiary hearing to determine whether Rodriguez truly *benefitted* from all [his] Prop[osition] 57 credits earned." (Italics added.) Rodriguez further states: "Rodriguez's YPED was set [for] January 2027 as the lower court correctly stated; however, due to current regulations, Rodriguez's YPED was actually advanced to July 2026, not November 2025."

As discussed above, only educational merit credits may be applied to advance Rodriguez's YPED. (Cal. Code Regs., tit. 15, § 3043, subd. (f).) And Rodriguez *admits*

that during the pendency of this action, his YPED was advanced based on educational merit credits earned.  Rodriguez's request for remand for an evidentiary hearing therefore lacks merit.

## **DISPOSITION**

The judgment is affirmed.  The parties shall bear their own costs on appeal.


FRANSON, Acting P. J.

WE CONCUR:


SNAUFFER, J.


ELLISON, J.*

---

*  Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18.